IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                       Cr. No. 20-1224 JB

DANIEL LOGAN MOCK,

      Defendant.

## UNITED STATES' SENTENCING MEMORANDUM

Freedom of speech is enshrined in the First Amendment to the United States Constitution. Americans have the right to speak freely and openly about our government, to challenge our elected officials, to demand better from them, and even to level the strongest criticism against them as individuals and as policymakers. But the First Amendment does not protect a citizen who uses his speech to threaten to execute government officials with whom he disagrees, distrusts, or dislikes.

Defendant Daniel Mock ("Defendant") is before this Court for sentencing in this matter because of his attempt to weaponize the Constitution's protection of free speech and use it as a sword to threaten the life of New Mexico's sitting Governor, Michelle Lujan Grisham, and the lives of law enforcement officers. For the following reasons, the United States requests that the Court accept the plea agreement and sentence Defendant to the 14-month term of imprisonment under its terms.

I. **FACTUAL SUMMARY**

Defendant enlisted in the United States Army in 2004 and was dishonorably discharged in 2011. Doc. 24 ("PSR") at ¶ 92. He first came to the attention of the Federal Bureau of Investigation ("FBI") in June 2019, when he posted remarks on the social media website,

1

Facebook, praising the gunman who opened fire on the Earle Cabell Federal Building and United States Courthouse in Dallas, Texas.  *Id.* at ¶ 12.  Defendant praised the deceased shooter as a "hero" and "patriotic [A]merican" for his actions "attacking tyrannical and corrupt government organizations."  *Id.*

Towards the end of 2019, and continuing on into the early months of 2020, Defendant's attention on social media focused intensely on Governor Lujan Grisham, frequently using her official Facebook page as a platform to express his unrest.  *Id.*  His posts ranged from complaining about where law enforcement officers parked their vehicles downtown Albuquerque to declaring he was running for governor, challenging Governor Lujan Grisham to a "fight to the death."  *Id.*  In the name of freedom, he said, he would be "taking all corrupt officials down" and would do so "[b]y vote or by rifle!"  *Id.*  Defendant's view of the Second Amendment was that it "makes it one million percent legal to kill government and law enforcement whom attempt tyranny."  *Id.*

On Facebook, Defendant claimed to be the "commanding officer" of the "Regulators militia."  *Id.*  The FBI investigation revealed Defendant as its sole member.  Nevertheless, he claimed to lead followers in this militia.  On more than once occasion, Defendant expressed his interest in finding a reason to "legally kill people."  *Id.*  He viewed women as "[m]uch easier targets to kill" and wished for war because he needed "a valid reason to kill police and government officials for tyranny."  *Id.*  He claimed that when his militia took control of the state, he would "have the governor tried and executed for tyranny."  *Id.*

In March 2020, Defendant's views crossed the line from general extremism to true threats. On March 2, 2020, Defendant posted his first threat on Governor Lujan Grisham's Facebook page, stating: "There is never going to be a case. Focus your energy on more important things like tickets

for the police who violated traffic and parking laws. This is why we are going to execute you." *Id.* at ¶ 11. Eleven days later, on March 13, 2020, he posted two additional threats. The first read:

> "I am going to begin red flagging myself in order to combat and kill all police and government officials who are in violation of the constitution. All officers who respond will be executed for Tyranny. So ask yourself is violating my rights worth your life? Cause I have no fear of killing bad men and dying for the people."

*Id.* at ¶ 10. The second read: "Time to pick up your rifles and kill this governor so we can reestablish the constitution as law of New Mexico. I'm done with corrupt government. They will serve the people or die." *Id.* at ¶ 9.

On March 14, 2020, the New Mexico State Police informed the FBI of Defendant's threats, and the FBI arrested Defendant three days later, on March 17, 2020. *Id.* at ¶ 18. Pursuant to this investigation, the FBI searched Defendant's residence and recovered the following items: a tactical vest, rifle magazines, a disassembled rifle, and a loaded pistol. *Id.* at ¶¶ 20-21. During his post-arrest interview, Defendant lied to FBI agents about the presence of a firearm in his home.

The United States charged Defendant with two violations of 18 U.S.C. § 875(c) by way of Information. Doc. 15. The United States entered into a plea agreement with Defendant pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Doc. 18. On May 13, 2020, Defendant entered a guilty plea to the Information. Docs. 16, 17, 19.

## II. LEGAL STANDARD AND ARGUMENT

### A. Section 3553(a) Factors

In imposing a sentence that is sufficient, but not greater than necessary, the court must consider the following seven factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to

    protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for – (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . .;
(5) any pertinent policy statement . . . .;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a)(1) – (7).

### B. A 14-Month Sentence is Just

As the parties' agreement reflects, in exchange for Defendant's guilty plea to two counts of interstate transmission of threatening communication, in violation of 18 U.S.C. § 875(c), the United States would agree to a 14-month sentence. Such a sentence is appropriate in this matter and fulfills the important sentencing goals laid out in 18 U.S.C. § 3553. Further, a 14-month sentence reflects the seriousness of Defendant's offense, promotes respect for the law, and provides just punishment.

> *1. The nature and circumstances of the offense and the history and characteristics of the defendant*

The United States cannot underscore the seriousness of Defendant's conduct that led to this case: Defendant explicitly threatened, three times, to execute a sitting governor and law enforcement officers. He did so because, through the lens in which he views the American system of government, the duly elected New Mexico Governor and the law enforcement officers sworn to protect and defend the state's communities were guilty of committing tyranny. In Defendant's own words, the government would "serve the people *or die*." After reviewing more than four thousand pages of Defendant's Facebook records, the United States maintains no doubt that Defendant's presence online reflects extremist anti-government and anti-authority sentiments. To

4

be clear, the government does not seek to punish him for these views, however repugnant they may be.

Defendant's attempt to hide behind a shield of patriotism and wrap himself in the flag of free speech failed him three times over.  First, on March 2, 2020, when he wrote to Governor Lujan Grisham "[t]his is why we are going to execute you." His threats had only increased by March 13, 2020, when he wrote that it was "[t]ime to *pick up your rifles and kill this governor …*"  He stated he would "begin red flagging myself in order to combat and kill all police and government officials who are in violation of the constitution" and issued a challenge to law enforcement who responded, stating that they would be "executed for Tyranny [sic]."

It is important for this Court to view Defendant's threats with an understanding of the state of our society at the time he made them.  Less than one week before Defendant's first threat, Governor Lujan Grisham had signed into law the hotly contested firearm seizure bill approved by the New Mexico Legislature during its annual legislative session.  The bill, entitled the "Extreme Risk Firearm Protection Order Act" and more commonly known as the "red flag law" was set to take effect in May.  By the time Defendant had posted his later threats, Governor Lujan Grisham had begun to issue a series of emergency public health orders in response to the COVID-19 pandemic, shutting down schools, restaurants, and more.  As the United States pointed out during Defendant's March detention hearing, only Defendant knew whether he considered these series of actions as the type of government overreach which might cause him to respond with violence. Whatever the answer, the FBI apprehended him before he could put any type of action behind his dangerous words.

Defendant is no stranger to the criminal justice system, as his criminal record dates back to age 13.  PSR at 10.  While he was in the Army, Defendant was convicted of desertion, using

cocaine, and larceny of government property. *Id.* at 13. His criminal record in the military led to his dishonorable discharge in 2011. *Id.* His record also reflects incidents of domestic violence against his mother, sisters, and current girlfriend. *Id.* at 10-14.

> 2. *The need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence*

By sentencing Defendant to a 14-month term of imprisonment, this Court has the ability to deter criminal conduct – specifically threats to kill government officials. Though Defendant may have viewed these as just words or blowing off steam, he caused harm. And by announcing to countless others on a worldwide online forum that it was "[t]ime to pick up your rifles and kill this governor …" Defendant could have inspired real violence. A 14-month sentence would send the appropriate message to Defendant and any other individuals contemplating making similar threats that speech intended to instill fear of execution solely because of one's position in government is not protected by the First Amendment and will be punished accordingly.

> 3. *The need to protect the public*

As previously stated, only Defendant knows whether he had any true intention of carrying out an act of violence. The items uncovered in his residence, including a tactical vest, a disassembled rifle, and a loaded pistol, when combined with his extremist views and the very fact that he lied to FBI agents about having a firearm, caused the United States to be concerned that he may have been preparing to do something other than rant on Facebook. A 14-month sentence would certainly protect the public from Defendant's future crimes.

There is no way to predict how Defendant will behave when he is released from prison. The best indicator with which we have to judge is his past performance. Because his past

performance illustrates violent tendencies, the United States respectfully recommends to the Court that it impose a three-year term of supervised release.

### 4. *Victim of the offense*

Pursuant to the United States' obligations as set forth in the Crime Victims' Rights Act, 18 U.S.C. § 3771, undersigned counsel notified the victim of the parties' plea agreement and the sentencing hearing.

## III. CONCLUSION

For these reasons, the United States recommends to the Court that it sentence Defendant to a 14-month term of imprisonment followed by a three-year term of supervised release.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

/s/
JAYMIE L. ROYBAL
Assistant United States Attorney
P.O. Box 607
Albuquerque, N.M. 87103
(505) 224-1413

I HEREBY CERTIFY that I filed the foregoing pleading electronically through the CM/ECF system which caused defense counsel, Megan Mitsunaga, to be served by electronic means, as reflected on the Notice of Electronic Filing as indicated therein on August 21, 2020.

/s/
Jaymie L. Roybal
Assistant United States Attorney